## HARNESS v. WILLIS–NICHOLS & CO.
### (No. 2733.)

(Court of Civil Appeals of Texas. Texarkana. May 20, 1923. Rehearing Denied May 3, 1923.)

1. **Sales �köö17—Buyer of cotton for delivery to third party held liable for latter's breach of contract to take and pay for it.**

One purchasing cotton for delivery to a third party *held* liable for the latter's failure to take and pay for some of it as agreed, in the absence of any agreement by the seller to release the original buyer from his obligation.

2. **Sales �köö372—Seller held not estopped from asserting buyer's liability by delay in notifying him of breach of contract by third party to whom delivery was to be made.**

A seller *held* not estopped from asserting the buyer's liability for breach of a contract by a third party, to whom delivery was directed to be made, to take and pay for the product sold, by delay in notifying the buyer of such breach; the seller having the right to assume that the buyer knew of such breach of his own contract by a party with whom he had arranged to perform it.

Error from District Court, Hunt County; Newman Phillips, Judge.

Suit by Willis-Nichols & Co. against C. T. Harness and another. Judgment for plaintiff, and defendant Harness brings error. Affirmed.

Plaintiff in error, defendants in error, and A. H. Richardson & Co., respectively, were dealers in cotton; plaintiff in error at Colorado, defendants in error at Greenville, and Richardson & Co. at Dallas. Plaintiff in error having sold 400 bales of cotton to Richardson & Co., 200 bales of which he was to deliver during October, 1920, and 200 bales during November of that year, in September,

1920, purchased 400 bales of defendants in error to enable him to comply with his contract with Richardson & Co. By the terms of the contract between plaintiff in error and defendants in error the latter were to deliver the cotton they sold the' former to Richardson & Co. at times specified in plaintiff in error's contract with said Richardson & Co.; that is, 200 bales were to be delivered during October, and 200 bales during November, 1920. It appeared from other testimony that as the cotton was delivered to them Richardson & Co. were to pay defendants in error the price therefor agreed upon between them and plaintiff in error, which was less than the price Richardson & Co. were to pay plaintiff in error. During October defendants in error delivered 100 bales of the cotton, and during November 64 bales thereof, to Richardson & Co., who paid for same as agreed upon. Richardson & Co. having failed to take and pay for the 236 bales remaining undelivered, defendants in error brought this suit against them and plaintiff in error to recover as damages the difference between the contract price of the cotton and the market value thereof at the time they should have taken and paid for same. After the suit was commenced, Richardson & Co. were adjudged to be bankrupt, and it was dismissed as to them. The trial was to the court without a jury, and the court, having found that the failure of Richardson & Co. to take and pay for 236 bales of the cotton was a breach by plaintiff in error of his contract with defendants in error, and that the difference between the market value and contract price of the 236 bales was $6,722.69, rendered judgment in favor of defendants in error against plaintiff in error for that sum.

Brown & Renfro, of Dallas, for plaintiff in error.

Looney & Bowman, of Greenville, for defendants in error.

WILLSON, C. J. (after stating the facts as above). The contentions made by plaintiff in error in the court below and urged here are: First, that the effect of the transactions between him, defendants in error, and Richardson & Co. was to make defendants in error instead of himself the sellers of the cotton to Richardson & Co., and the latter instead of himself the buyers thereof from defendants in error; and, second, if such was not its effect, and he was ever bound by the contract, that defendants in error were estopped by their conduct in connection with the matter from asserting liability on his part to them.

We do not think there is any merit in either of the contentions.

[1] The contract in question was in writing, and it plainly bound plaintiff in error as the buyer and defendants in error as the sellers of the cotton. It did not appear from the writing, but it did appear from other

**251 S.W.—18**

testimony, that defendants in error were to deliver the cotton to Richardson & Co., who were to pay them the price therefor agreed upon between plaintiff in error and defendants in error. It did not appear, however, that defendants in error, when they agreed to deliver the cotton to and accept payment therefor from Richardson & Co., or at any time, agreed to release plaintiff in error of the liability he incurred as the buyer of the cotton. On the contrary, the testimony on behalf of defendants in error was that there was no understanding or agreement on their part to release him. The case on its facts seems to be the simple one of a seller arranging with a third person to deliver to a buyer goods he (the seller) had agreed to deliver to him (the buyer). The arrangement by which Richardson & Co., instead of plaintiff in error, was to pay defendants in error for the cotton as it was delivered to them by defendants in error, seems to have been between plaintiff in error and Richardson & Co.; defendants in error merely agreeing to accept payment therefor from Richardson & Co. The delivery by defendants in error of a part of the cotton to Richardson & Co. and the tender of the remainder thereof to them was not in the performance by defendants in error of a contract they had with Richardson & Co., but of the contract they had with plaintiff in error; and the payment by Richardson & Co. for the cotton delivered to them was not in the performance of a contract they had with defendants in error, but of a contract they had with plaintiff in error. If Richardson & Co. were liable to defendants in error at all (2 R. C. L. 625), it was because they assumed the obligation of plaintiff in error under his contract with defendants in error. While such an assumption might affect the liability of Richardson & Co. and plaintiff in error as between themselves for a failure of the former to perform the contract they assumed, certainly it would not affect plaintiff in error's liability to defendants in error for nonperformance, in the absence of an agreement on their part that it should. Ry. Co. v. Ry. Co., 84 Or. 524, 163 Pac. 1173; Ry. Co. v. Atlantic & N. C. Co., 147 N. C. 368, 61 S. E. 185, 23 L. R. A. (N. S.) 223, 125 Am. St. Rep. 550, 15 Ann. Cas. 363; 5. C. J. 878, 977.

[2] The other contention is based on testimony showing that defendants in error did not notify plaintiff in error until November 17, 1920, that Richardson & Co. were not taking and paying for the cotton as they had agreed with plaintiff in error they would. A sufficient answer to the contention, we think, lies in the fact that plaintiff in error had no right to expect defendants in error to so notify them. It was plaintiff in error's contract that was being breached by parties he had arranged with to perform it. Defendants in error had not undertaken to notify him if Richardson & Co. defaulted in

their obligation to him, and we think had a right to assume that he knew of the default when it occurred, for the default of Richardson & Co. was in its legal effect his default.

The judgment is affirmed.