**WAGGONER et al. v. EDWARDS et ux.**

No. 4098.

Court of Civil Appeals of Texas. Amarillo.

Nov. 15, 1933.

Rehearing Denied March 5, 1934.

Seth Barwise, Thompson & Barwise, and Hiner & Pannill, all of Ft. Worth, and R. C. Gwilliam, of Tulsa, Okl., for appellants.

C. D. Russell, of Plainview, for appellees.

HALL, Chief Justice.

The appellee Edwards and wife sued W. T. Waggoner, E. A. Compton, and A. B. Wharton, Jr., all of whom were alleged to reside in Tarrant county, Tex., and the Marathon Oil Company, alleged to be a foreign corporation having a permit to do business in Texas and having an agent in Dallas county, Tex., upon whom process might be served. The plaintiffs alleged that they were the owners and in possession of lot No. 1, block No. 73, in the town of Olton, Lamb county, upon which there was located a building used as a gasoline service station; that they also owned certain personal property situated on the lot and used in connection with the station; that on the 28th day of May, 1930, they executed a written lease to the Three D's Products Distributors, Inc., a domestic corporation, for a term of five years at a rental of $250 per month, payable in advance. The contract contains the following provisions material to the issues to be decided:

"3. Lessor and lessee mutually stipulate, contract and agree:

"That if the building, constructed upon the leased premises, shall be destroyed or rendered untenable by fire or unavoidable accident, without fault or default on the part of Lessee, then Lessor shall, with reasonable diligence and dispatch, and at Lessor's expense, repair and replace such damaged or destroyed building, so that same will be in substantially as good a condition as before its destruction or damage; and, during the period of time that said building is being so repaired or replaced, lessee shall only pay a ratable proportion of the rent, corresponding with the extent of use of the building, should it only be partially damaged, and should said building be totally damaged or destroyed, then lessee shall pay no rent during the time intervening before said building is replaced; provided, however, in the event said building is so damaged or rendered untenable, by fire or unavoidable accident, as to require, in the judgment of lessor, substantially its entire replacement, then it is mutually agreed that lessor shall have the right to declare this contract terminated, and thereupon, in consideration thereof, lessee shall be released and discharged of any further rentals which would accrue if this lease were continued to the end of the term first herein named. * * *

"5. This lease contract shall run to and in favor of lessor and lessee, and their respective successors and assigns."

This lease appears to have been executed in Lamb county and acknowledged by Edwards before a notary public of that county on the 3d day of July, 1930. It was acknowledged by A. B. Wharton, Jr., as president of the Three D's Products Distributors, Inc., on the 29th day of May, before a notary public of Tarrant county.

Plaintiff further alleged that about the 4th day of December, 1930, Waggoner, Wharton and Compton, acting for the Three D's Products Distributors, Inc., and for the stockholders thereof (said corporation having theretofore been dissolved), assigned, transferred, and conveyed to the Marathon Oil Company the aforesaid lease, and pleaded the assignment in full, as follows:

"The State of Texas, County of Lamb:

"Assignment of Lease

"That, the Three D's Products Distributors, Incorporated, a dissolved corporation of Fort Worth, Tarrant County, acting by and through A. B. Wharton, Jr., W. T. Waggoner and E. A. Compton, being all of the former directors and Trustees for the Stockholders of Three D's Products Distributors, Incorporated, a dissolved corporation, for and in consideration of Five Hundred and No/100 ($500.00) Dollars, cash in hand paid, by Marathon Oil Company, a corporation, of the State of Delaware, and other valuable consideration, receipt of which is hereby acknowledged,

"Does hereby assign, transfer and convey unto the said Marathon Oil Company, a corporation, a certain lease bearing date of May 28, 1930, made by J. Arthur Edwards of Lamb County, Texas, for a term of five (5) years, reserving unto the said J. Arthur Edwards, the rental of Two Hundred and Fifty and no/100 ($250.00) Dollars per month, payable per month in advance, with all and singular the premises therein described and mentioned and the buildings thereon, together with the appurtenances therein mentioned and described; being Lot No. 1, Block No. 73, Olton, Lamb County, Texas,

"To have and to hold the same for and during the remainder of the term mentioned

in said lease, with the rights and privileges therein granted.

"And we do further covenant that the said assign*ment* [ed] premises are free from all other gifts, grants, bargains, sales, leases and incumbrances by us suffered, made or created.

"Executed at Fort Worth, Texas, on this the 4th day of December, 1930.

"Three D's Products Distributors,
Incorporated
"[Corp. Seal] By A. B. Wharton, Jr.,
"E. A. Compton,
"W. T. Waggoner,
"Former Directors and Trustees for the Stockholders of Three D's Products Distributors, Incorporated, a dissolved corporation.
"Attest:
"E. A. Compton, Secretary."

It was acknowledged before a notary public of Tarrant county.

Plaintiffs then alleged that the rentals provided by the lease contract had not been paid for the months of September, October, and November, 1932, and prayed for judgment against defendants jointly and severally therefor.

The Marathon Oil Company filed its plea of privilege, alleging it was not a resident of Lamb county, but of Tarrant county; that it was a foreign corporation with a permit to do business in the state of Texas and maintained its general offices for that purpose in Fort Worth. Waggoner, Wharton, and Compton filed their joint plea of privilege on the same day, alleging that they were not residents of Lamb county, but during all the times involved were residents of Tarrant county.

Thereafter the plaintiffs in due time filed controverting affidavits, to each of which was attached a copy of plaintiffs' original petition. They alleged, in substance, that the lease contract was executed in Lamb county, and that plaintiffs' cause of action arose in Lamb county, and that the Marathon Oil Company, being a foreign corporation, could be sued in Lamb county under R. S. art. 1995, subds. 23 and 27, and, because the lease contract was in writing and performable in Lamb county, venue was properly laid in such county under subdivision 5 of said statute.

As to the three individual defendants, plaintiffs' controverting affidavit alleged that their cause of action was based upon the lease contract attached to their original petition; that said contract was executed in Lamb county,

and therefore the cause of action arose in said county, in consequence of which the suit against the corporation by and through its directors and trustees was maintainable in said county under R. S. art. 1995, subds. 5 and 23, and that said individuals, being necessary parties to the suit, were properly made parties under subdivision 29a of said statute.

The pleas of privilege, together with the controverting affidavits, were thereafter submitted to the trial court, who, after hearing the evidence and argument of counsel, overruled both said pleas of privilege, from which order all of the defendants appealed.

█ R. S. art. 1995, subd. 23, provides that suits against a private corporation may be brought in any county in which the cause of action or a part thereof arose. Subdivision 27 provides that foreign corporations, private or public, not incorporated by the laws of this state and doing business within the state, may be sued in any county where the cause of action or a part thereof accrued. Under those two provisions of the venue statute, the Three D's Products Distributors, Incorporated, was properly sued in Lamb county. The testimony shows without question that the original lease contract was prepared by the officers of the Three D's Products Distributors, Inc., executed by A. B. Wharton, Jr., and thereafter was presented by its agent to Edwards in Lamb county and executed by him there. It is uniformly held that the cause of action, as used in subdivision 23, supra, comprehends the agreement between the parties, its performance by the one and breach by the other, and to arise either in the county where it was made, where it was breached or where the defendant resides. 11 Tex. Jur. 53, § 401.

Id. § 402, says: "For other purposes, the courts have had occasion to define what constitutes a cause of action. These cases may doubtless be usefully referred to in connection with the application of the venue statute, but it must not be overlooked that the words 'or a part thereof' form one of the essentials of the statutory criterion. Plainly it is not necessary that all the facts constituting a cause of action shall have arisen in the county of the suit. The added phrase 'or a part thereof' has the effect for the purpose of the venue to divide the cause of action and to permit the trial to be where any portion of the cause has arisen; otherwise the phrase would be without meaning and effect. * * * More specifically in the case of an action on a contract, the cause of action is composed of the facts relating to the

formation of the contract and those constituting its breach."

Id. § 403: "The requirement of the statute [Sec. 23] that part of the cause of action must have arisen in the county where the suit is brought, is satisfied upon proof that the contract was made in that county, notwithstanding the facts that the breach of the contract occurred in another county and that the action is one for damages for the breach. A contract may be analysed into the elements of offer and acceptance and it is well established that the place of formation of the contract is the place at which the offer is accepted, not where the offer is made, regardless of whether the offerer and the acceptor are then at different places and the acceptance is dispatched by mail or telegram or transmitted by telephone message."

As stated, the contract was prepared by the Three D's Products Distributors, Inc., and executed by Wharton. It was still not a contract which in any way governed the rights of the parties until Edwards had executed it. It was merely an offer, and required for its completion acceptance by Edwards. It was accepted, as shown by the record, by him at the time he executed it, and this was done in Lamb county.

■ The appellants contend that, because the Three D's Products Distributors, Inc., had been dissolved prior to the filing of this suit, the venue statutes quoted above do not apply. We cannot assent to this proposition. The record does not show for what reason the Three D's Products Distributors, Inc., was dissolved, nor does the record show that a receiver has ever been appointed to take charge of its affairs. R. S. art. 1388, provides that, upon the dissolution of a corporation, unless a receiver has been appointed, the president, directors, and managers of the affairs of the corporation at the time of dissolution shall be trustees of the creditors and stockholders thereof, with power to settle its affairs, collect the outstanding debts, and divide the moneys and other property amongst the stockholders after paying the debts due at the time of its dissolution, and for this purpose they may, in the name of such corporation, exercise practically all the powers which the corporation itself could exercise if it had not been dissolved; that it may collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said Company over such assets and property. It is further provided by article 1389 that the existence of every corporation may be continued for three years aft-

er its dissolution from whatever cause, for the purpose of enabling those charged with the duty to settle up its affairs, and the further provision of article 1390 is that the dissolution of a corporation shall not operate to abate, nor be construed as abating, any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation, and judgment shall be rendered as though the same were not dissolved. Article 1391 further provides that, when no receiver has been appointed, suit may be instituted against the corporation as though the same had [not] been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved, and judgment may be rendered as though the corporation had not been dissolved.

■ It was clearly the intention of the Legislature in enacting these statutes to change the rule of law as it previously existed under which a dissolved corporation could not be sued, and the effect of the statutes cited is to maintain the status quo and continue the existence of the corporation as a legal entity for the purpose, however, of distributing its assets first amongst the creditors and the residue, if any, amongst the stockholders, and it is expressly authorized to sue and be sued upon any claim against it.

■ Since it is still a legal entity, we are of the opinion that the venue statutes apply with all the force which they could be made to apply to the corporation before its dissolution, and we conclude, since the contract was consummated in Lamb county and these provisions of the statute preserve its legal entity for the convenience of creditors and the effectiveness of their efforts in collecting indebtedness due from it, that Waggoner et al., who are by statute made the trustees, may be held to answer in an action in Lamb county. The suit is not against Waggoner et al., as individuals. They are sued only in their representative capacity.

■ Since the Marathon Oil Company is a foreign corporation, it may be made a party defendant in Lamb county under the provisions of the original lease and the assignment.

Section 5 of the original lease is: "This lease contract shall run to and in favor of lessor and lessee and their respective successors and assigns." In our opinion, this term of the contract binds the Marathon Company as assignee in every particular in which an obligation or a right was imposed thereby upon

the Three D's Products Distributors, Inc. In other words, the Marathon Company purchased the lease, taking its burdens and obligations, together with its rights and advantages. If there is any uncertainty or ambiguity in this clause, it must be construed most strongly against the Three D's Products Distributors, Inc. In pursuance of their authority as the trustees of the dissolved corporation, Waggoner and others, for a consideration of $500 paid by the Marathon Oil Company, assigned unto the oil company "a certain lease bearing date of May 28, 1930, made by J. Arthur Edwards of Lamb County, Texas, for a term of five years, reserving unto the said J. Arthur Edwards a rental of $250 and no/100 dollars per month, payable per month in advance," and by reference describes the same property described in the original lease. It contains this clause: "To have and to hold the same for and during the remainder of the term mentioned in said lease, with the rights and privileges therein granted." The legal effect of this assignment is simply to substitute the Marathon Oil Company for the original lessee.

While the assignment is a part of plaintiffs' cause of action against the Marathon Company, the same is true of the original lease according to our construction of the language used in both instruments. Plaintiffs' right of action against the Three D's Products Distributors, Inc., is upon the original lease, while their right to recover against the Marathon Oil Company is predicated upon the original lease as supplemented by the assignment. The original lease is therefore a part of plaintiffs' cause of action against the latter company, and, since that was executed in Lamb county, action may be maintained there. We are sustained in this holding by the numerous authorities cited in support of the text in 11 Texas Jurisprudence, supra.

Appellants make the further contention that, because the Marathon Oil Company did not expressly assume to pay the rents, as assignee thereof it cannot be held for the amount due. This contention is not sustained by the authorities.

It is said in 27 Texas Jurisprudence, 378, § 226: "If the lessee or tenant has assigned to another his rights under the lease, the lessor is entitled to recover the stipulated rentals in a suit against the assignee and that privity of estate and contract is held to exist between the parties."

Supporting this rule, the text-writer cites Davis v. Vidal, 105 Tex. 444, 446, 151 S. W. 290, 42 L. R. A. (N. S.) 1084, and Speed v. Jay,

267 S. W. 1033, and Jackson v. Knight, 194 S. W. 844, both decided by this court, together with numerous other authorities to which we refer.

As bearing upon the lessee's authority, it is said in 27 Tex. Jur. 384, § 230: "As to whether or not the lessee having assigned the lease or term, is released from liability to pay rent, depends upon the showing as to the intention of the parties to the lease. The lessee is bound unless it is to be concluded as a matter of fact that he has been released by the lessor and inasmuch as the assignee is obligated to pay the stipulated sum, it is apparent that both the lessee and the assignee are liable to the lessor—though, of course, only one satisfaction may be enforced. The lessee is held to be liable as a surety for the assignee. It has been said 'as between the original lessees and assignees, the latter become primarily liable for its payment and the liability of the original lessee becomes in the nature of suretyship.' "

In the case of Cauble v. Hanson, 249 S. W. 175, 176, by the Commission of Appeals affirming the judgment of the Court of Civil Appeals in that case (224 S. W. 922), Judge Powell, quoting at length from Speed v. Jay, says: "Liability for rent is based upon privity of contract or privity of estate. Where there is an express covenant to pay, the lessee is held in privity of contract. In the absence of an express covenant to pay, the liability arises upon an implied obligation whereby he is held in privity of estate. In the absence of an express covenant to pay rent, if the lessee parts with his estate, with the consent of the lessor, the privity of estate is thereby destroyed, and the lessee is not further obligated to pay rent, since there is nothing upon which to base the implied obligation. In contrast with such cessation of the lessee's liability upon the implied covenant, the rule, where there is an express covenant to pay rent, is that the lessee after assignment remains liable on his express covenant, as in such case, though the privity of estate is terminated by the assignment, the privity of contract is unaffected. The lessee remains liable to the lessor on his express covenant to pay even though the assignment was made with the consent of the lessor."

Because the Three D's Products Distributors. Inc., had expressly agreed to pay $250 per month, and because the lease itself for the entire term was assigned to the Marathon Oil Company, which took it with all of its burdens as well as its privileges, or, as stated in the assignment, "with all rights and privileg-

es therein granted," we are of the opinion that the plaintiffs had the right to maintain the suit against all the defendants in Lamb county. Savage v. H. C. Burks & Co. (Tex. Civ. App.) 270 S. W. 244; Clifford-Bell Pet. Co. v. Banker's Pet. Co. (Tex. Civ. App.) 286 S. W. 564; Campbell v. Cates (Tex. Civ. App.) 51 S. W. 268; Pittsburg Water Heater Co. v. Sullivan, 115 Tex. 417, 282 S. W. 576.

For the reasons stated, the judgment is affirmed.

### On Motion for Rehearing.

■ The Marathon Oil Company insists that, because the plaintiffs failed to introduce the charter of said company or certified copy thereof, and failed to make other competent proof of the fact that the Marathon Oil Company was really a corporation, the evidence was insufficient to overcome its plea of privilege, and cites in support thereof Bain Peanut Co. of Texas v. Pinson & Guyger (Tex. Civ. App.) 273 S. W. 655, which seems to support the contention.

As said in the original opinion, the Marathon Oil Company filed its plea of privilege, expressly admitting that it was a foreign corporation with a permit to do business in the state of Texas.

In Texas-Louisiana Power Co. v. Wells, 121 Tex. 397, 48 S.W.(2d) 978, 981, Judge Harvey held that section 23 of article 1995, R. S., was valid, and applied alike to foreign and domestic corporations, and further said: "The supporting affidavit attached to the company's plea of privilege is not set out in the above certificate, but is set out in the transcript which is before us. The fact that said company is a corporation is expressly admitted in said supporting affidavit; consequently there was no need for the plaintiffs to introduce testimony to prove this admitted fact."

■ The effect of this holding is to overrule the Bain Peanut Company Case. The general rule is that it is not necessary for one party to plead facts admitted to be true in the pleadings of the opposite party.

■ By the second proposition, the Marathon Company insists that it was the duty of the appellees to prove the execution, according to the rules of common law, of the assignment of the lease made to it by the trustees of the Three D's Company, and that this court erred in holding that such assignment, when considered in connection with the original lease, constituted a written contract on the part of the Marathon Oil Company performable in Lamb county, and asserts that the case of S. N. Johnson v. Dallas Cooperage & Woodenware Co., 120 Tex. 27, 34 S.W.(2d) 845, 847, sustains the proposition. That was a case where a partnership composed of Johnson and G. W. Derby was doing business in Webb county. The suit was instituted in Dallas county upon trade acceptances made payable in that county. It was shown that Derby had died and Johnson pleaded his privilege to be sued in Webb county. Johnson's rights, of course, are not governed by subdivisions 23 and 27 of article 1995, and the right of Edwards to maintain this action in Lamb county does not depend upon the existence of a written contract performable in said county. It is therefore difficult to understand why the Johnson Case has any bearing upon the instant case. In that case the Dallas court certified several questions. The first two, being the only ones that were answered, are as follows:

"First Question: Is the sworn plea of privilege a sufficient denial under oath, under articles 2008, 2010 and 3734 of the Revised Statutes, to require the plaintiff to prove the execution of the trade acceptances sued on, and to require it to prove that appellee S. N. Johnson was a partner with G. W. Derby, before same could be offered in evidence?

"Second Question: Were said trade acceptances properly admitted in evidence in this case, over the objection that their execution had not been proved and that it had not been shown that S. N. Johnson and D. W. Derby were partners?"

In fact, the opinion by Judge Short answering the questions shows that the case has no application whatever to the instant case. He said that, when the controverting affidavit was filed, the only issue presented by the pleadings was whether Johnson, at the time he filed his plea of privilege as well as at the time the suit was brought and at the time he was served with process, resided in Webb county, and that at such times he had not contracted in writing to perform the obligation in Dallas county. No pleading has been filed in the instant case denying the execution of the lease or the assignment thereof. Judge Short further said that whether Johnson had contracted to perform the obligation was not necessarily in issue, and that such issue could arise only upon a trial of the case upon its merits and not elsewhere. It further appears in that case that the controverting affidavit does not deny the fact that Johnson was entitled to be sued in Webb county, unless he had obligated himself in writing to pay in Dallas county, and the crux of the whole decision lies in this

statement by Judge Short: "Had the original plaintiff upon the trial of this issue introduced in connection with the introduction of these instruments extraneous proof, either oral or written, tending to identify the defendant, S. N. Johnson, with the execution of these instruments, in such a way, as in the opinion of the court would have been sufficient to overturn the prima facie case made by the plea of privilege, then it would have been the duty of the trial court to have found in favor of the original plaintiff on this issue."

He cites Bradley v. Trinity State Bank, 118 Tex. 274, 14 S.W.(2d) 810, wherein it was held that, in determining the question of venue, evidence of ownership of a note and validity of an obligation evidenced thereby were properly excluded. It appears that the person seeking the benefits of the plea had executed the note which purported to be an undertaking by this person to pay in the county where the suit was brought, and, to differentiate the two cases, says: "The certificate in this case does not show that these instruments in writing were executed by S. N. Johnson, the original defendant."

No question is made in the instant case as to the authenticity and genuineness of the instruments sued on herein, nor is there any question as to the identity of the parties who executed the instruments or their authority to do so. The Marathon Company further cites the case of Greenville Gas & Fuel Co. v. Commercial Finance Co., 117 Tex. 124, 298 S. W. 550, 551. It appears that the Greenville Gas & Fuel Co. had indorsed certain notes made payable to the Finance Company in McLennan county. The indorsements had been made by Wise, who, it appears, was vice president and general manager of the Gas & Fuel Company. The authority of Wise to indorse the notes for the Gas & Fuel Company was denied by proper pleadings. Nevertheless, the notes with their indorsements were introduced over the appellee's proper objections, and the plea of privilege filed by the Gas & Fuel Company to be sued in Hunt county, the county of its domicile, was overruled.

This case does not sustain the appellant's contention. On the contrary, it is in line with the holding of this court in the instant case. Judge Harvey said: "As depriving the defendant company [Greenville Gas & Fuel Co.] of such privilege [to be sued in Hunt County] in the present case, the plaintiff, in its controverting affidavit, pleads a contract in writing by the defendant to perform, in McLennan county, the obligation sued on. This contract is alleged to consist of the indorsements themselves, the legal import of which indorsements is to impose upon the defendants the obligation to pay the notes in the county specified in the notes. In order, therefore, for the suit to be maintained in McLennan county, it was necessary for the plaintiff to prove that the execution of the indorsements is imputable to the defendant. In the absence of an affidavit by the defendant, denying the execution of the indorsements, the writings themselves would have supplied the required proof of this fact, by virtue of the provisions of Article 3734 of the Revised Statutes 1925. But when the defendant filed its affidavit, in which it denies executing or authorizing the indorsements, the value of the writings, as evidence of their having been executed under the defendant's authority, was destroyed; and the plaintiff became charged with the burden of proving, by extrinsic evidence, the authority of Wise to execute the indorsements in behalf of the defendant."

Edwards' suit in this case is under R. S. art. 3734, which provides that, when any petition is founded in whole or in part upon any instrument in writing charged to have been executed by the other party or his authority, such written instrument shall be received as evidence without the necessity of proving its execution, unless the other party shall file his affidavit denying the execution thereof. So, under this article of the statute and the Greenville Gas & Fuel Co. Case, the appellant's second proposition is wholly without merit and is overruled. Propeck v. Farmers' Mut. Ins. Ass'n (Tex. Civ. App.) 65 S.W.(2d) 390.

■■ The third proposition, wherein it is insisted that, in the absence of an express agreement on the part of an assignee of the unexpired term of a lease of real property to assume and pay the rentals contracted to be paid by the original lessee, the assignee is only liable to the lessor for the payment of rents during the time he occupies such premises, was discussed in the original opinion in which we cited numerous cases holding that the assignee under such circumstances becomes primarily liable for the debt, and the original lessee only secondarily liable. The lessee having enjoyed and exercised his right to dispose of such leasehold estate, the assignee is held to take the estate subject to all the terms and conditions expressed in the original lease contract, and is bound to the original lessor for the performance of the

obligations which were imposed upon his assignor, or, in other words, he simply stands in the shoes of the original lessee. The Marathon Company, having acquired the lease and the possession of the premises from the Three D's Products Company, could not avoid its liability by making an assignment to a third party, and is still liable until it has been released by the original lessor. We cite the following additional authorities: Gaddy v. Rich (Tex. Civ. App.) 59 S.W.(2d) 921; Stern v. Maxwell (Tex. Civ. App.) 44 S.W.(2d) 482; Gray v. Tate (Tex. Civ. App.) 251 S. W. 820; Le Gierse v. Green, 61 Tex. 128.

The movant asserts that this court is committed to the doctrine that the Marathon Company is not liable, in the absence of an express assumption upon its part to pay the rents by the holding of Associate Justice Jackson in the case of Hall v. Arnett et al. (Tex. Civ. App.) 51 S.W.(2d) 506. That case has no more application to the facts of the instant case than several others cited by the movant. Judge Jackson was considering a case involving the rights and liabilities of the assignee who had assumed in writing the obligations of the vendor. The rights of landlords, tenants, and assignees thereof are not even mentioned in the case.

We are requested in the motion to find as a fact that no testimony was offered or introduced upon the trial in the lower court showing that appellant was in fact a foreign corporation duly and legally incorporated, having a permit to do business in Texas. Such finding is unnecessary, in view of the admission by the Marathon Company in its plea of privilege.

 █ It is the duty of the court to take judicial notice of the pleadings filed in the case pending before it, Humphreys v. Young et al. (Tex. Civ. App.) 293 S. W. 655, and also of the contents of said pleadings, Eggenberger v. Brandenberger, 74 Tex. 274, 11 S. W. 1099; Blair & Hughes Co. v. Short (Tex. Civ. App.) 271 S. W. 199; 7 Enc. Ev. 999, and the facts admitted by such party need not be proved, but such admission has the effect of withdrawing the issue of the existence of the admitted fact from the jury, and leaves no such issue to be submitted, Southwestern Portland Cement Co. v. Kezer (Tex. Civ. App.) 174 S. W. 661, 672; Houston, E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877; 17 Tex. Jur. 576, § 240.

The further contention is made that, when the Marathon Company, which acquired the lease from the Three D's Company December 4, 1930, assigned the lease to T. D. Farley of Muleshoe, for $10, the Marathon Company ceased to be liable for the rents.

The uncontradicted testimony is that Edwards knew nothing of this assignment until long after it had been made, and it was not shown that he ever consented to the assignment, nor is it shown that he ever recognized Farley as being rightfully in possession. The Marathon Company could not for a nominal sum by secret assignment, without the consent of the lessor Edwards, transfer the lease to Farley and relieve itself of its primary liability for the payment of the rents.

It is therefore unnecessary for us to make any finding with reference to Farley, since Edwards testified that he thought Farley was running the business for the Marathon people and did not learn of the assignment to Farley until just prior to the filing of the suit.

 After a careful review of the record, we find that by the first amended original petition Edwards set up the fact of the dissolution of the Three D's Products Corporation, and alleged that the Three D's Company was dissolved; that at the time of its dissolution it was the owner of and in possession of the property and assets which were subject to the payment of its obligations, and that W. T. Waggoner, A. B. Wharton, Jr., and E. A. Compton received and assumed control of assets belonging to said corporation which were subject to and liable for the payment of plaintiff's claim asserted herein. While the amended petition may be insufficient in some particulars, if challenged by a general demurrer (11 Tex. Jur. 132–134), it is clear from its allegations that Edwards is seeking to recover against Waggoner, Wharton, and Compton as trustees and directors of the defunct corporation and not against them as individuals. He could have sued them as such trustees or sued the defunct corporation by name. He could not have recovered against them as individuals unless it was shown that they had illegally converted the assets of the corporation. Since his suit is against them as trustees, their joint plea of privilege is wholly insufficient. The plea is made, verified, and filed by them as individuals. It fails to make any reference to the defunct corporation which by virtue of the suit is still in existence for the purposes of the suit or to negative any ground upon which the defunct corporation could be held to answer in this action filed in Lamb county. The result is that neither the Three D's Products Corporation as a legal entity, nor its officers and directors as

trustees, have filed any plea of privilege whatever, and the court was justified in overruling it upon that ground, Spurlock v. Dunaway Bros. (Tex. Civ. App.) 277 S. W. 758, and, even if it be admitted that the Marathon Company was entitled to a change of venue if sued alone, the court had jurisdiction of the other defendants, and to avoid a multiplicity of suits was entitled to retain jurisdiction of the Marathon Company, since the asserted cause of action against them was connected with, and grew out of, the same transaction.

For the reasons stated, both motions for rehearing, for additional findings of fact, and to certify are overruled.